## Case No. 2,952.

### COFFIN v. SHAW.

[3 Ware, 82;[1] 19 Law Rep. 146.]

District Court, D. Massachusetts. June 11, 1856.[2]

SHIPMENT OF MINOR — DESERTION AFTER MINORITY—FORFEITURE OF WAGES—RIGHT OF FATHER—GUARANTY.

1. A father shipped his son, a minor, under the age of seventeen, by a contract in the common form, for a whaling voyage to the Pacific ocean and elsewhere. The son faithfully did duty during the whole period of his minority, and afterwards deserted before the termination of the voyage.

2. *Held*, that the desertion did not forfeit the wages of the son during his minority, which were due to the father. The obligations of the father's contract terminated with his son's minority, and his responsibility for his acts ceased at the same time.

3. A simple promise, by one, of the act of another person who is sui juris is void. But a contract of guaranty or suretyship for the act of another, if on a sufficient consideration, is valid.

4. In this case no such guaranty being proved, it could not be presumed.

[In admiralty. Libel by Jesse Coffin against John H. Shaw.]

A. S. Cushman, for libellant.
J. C. Stone, for respondent.

WARE, District Judge. This is a libel brought by Jesse Coffin, to recover, against the owners of the ship Alabama, of Nantucket, the lay or wages earned by George M. Coffin, his son, in a whaling voyage described in the shipping-paper as a voyage to the Pacific ocean and elsewhere. There

---

[1] [Reported by George F. Emery, Esq.]
[2] [Affirmed in Case No. 2,951.]

is no controversy as to the facts in the case. It is admitted that George M. Coffin was at the time of the contract a minor; that he was regularly shipped by the libellant, his father, for the voyage, on the 26th of May, 1846, as a cooper; that his lay or wages was to be one seventy-fifth of the proceeds of the cruise; that he proceeded on the voyage, and faithfully and with fully an ordinary share of ability performed the service for which he was engaged, and remained in the ship till the 21st of November, 1850, four years and within a few days of six months. It is also admitted that he then deserted, while the vessel lay at the Sandwich Islands, the voyage or cruise not being at the time completed. The cause or inducement to the desertion is proved by the libellant's own witness. Not long before that time the discovery had been made of the great mineral riches of California. The tempting prospect of sudden and easily acquired wealth was too strong for the young man, and he abandoned the ship for the purpose of seeking a fortune among the gold mines of this new El Dorado. He had no cause of complaint against the master of the vessel, and he deserted purely from motives of interest, on the calculation of finding a more lucrative employment. It was, therefore, a desertion not only without justification, but without palliation.

In every age of the maritime law, a wanton and wilful desertion before the termination of the voyage, has been held to work a forfeiture of all wages antecedently earned. In the case of Gifford v. Kollock [Case No. 5,409], I thought, though this was the general rule, that the law was not imperative on the court to inflict the entire forfeiture; but when the desertion was attended by extenuating circumstances, not amounting to a justification, these circumstances might be taken into consideration, and the penalty mitigated to a reasonable deduction from the wages, or even to a case of mere compensation and indemnity to the owners for the actual damage sustained. Perhaps when the desertion is proved precisely according to the requirements of the act of 1790, c. 29, § 5 (1 Stat. 133), it may be otherwise. It may be that the act makes it a statute penalty, and by its terms takes from the court all power of qualifying the offence, and reducing the penalty in consideration of palliating circumstances, that do not constitute a full justification. The facts of the case did not call for the expression of an opinion on that point. But to the doctrine held in that case, I still adhere. In the present, however, there were no extenuating circumstances. The desertion was not only without justification but without palliation. But there is another admitted fact to be adverted to in this case, and it is the only one that creates any difficulty in my mind. This boy was shipped by his father while he was a minor. During his minority he was earning wages for his father's benefit, and working

out his contract. And while that continued, his father must be held so far responsible for his conduct; that any act in breach of the contract, which legally affected the right to wages, is imputable to him. But the desertion took place on the 21st of November, 1850, and the boy arrived at the age of twenty-one on the 17th day of the preceding August, and then ceased to be under the parental power. He then ceased to earn wages for his father, was entitled to his own earnings, and became alone responsible for his own acts. The shipping contract made by his father then terminated by operation of law, and up to that time there had been no forfeiture. The father had then acquired all the rights he could acquire under the contract, and as he had no longer any right of control over his son, he ceased to be responsible for his acts. How then could his rights be affected by any subsequent acts, or how can there be a breach of a contract that no longer existed, but which was dissolved by operation of law? It appears to me that there is but one possible condition of the contract by which he could be so affected.

It is a principle of common sense and natural justice, as well as of law, that contracts have their effects, both of benefit and burden of right and obligation, only between the parties. No one can stipulate or promise but for himself. A promise that another shall give a particular thing, or do a particular act, is simply void, conferring no right and producing no obligation. It is an exception to the rule, when the person whose act is promised is under the control of the promisor; as, if he promises the acts of a hired servant in his employment, the promise binds him as if he had promised his own act; or if he promises the act of a minor, being an apprentice or a child, as in this case. 6 Toullier, Droit Civil Francais, No. 136. The libellant, in his character of a parent, had the right of control over his son, and if he engaged, by this contract, that his son should faithfully serve the owners as a cooper in the voyage, as he must be considered to have done, he will be equally affected by a breach of this engagement by his child as if he had promised his own personal act and violated his promise, and must bear the legal consequences of such violation. But his responsibility lasted only as long as his contract, and that terminated with his son's minority. But though the simple promise of the act of another is merely void, and neither binds the promisor nor the person whose act is promised, by varying the form of the engagement, it may become binding on the promisor. The distinction is succinctly and clearly expressed in the Institutes of Justinian: "If one promises that another shall give or do anything, he is not bound, as if he promises that Titius shall give five pieces of gold. But if he promises that he will take care or cause that Titius gives it, he is bound." "Si quis alium daturum facturumve quid spoponderit, non obligabitur, veluti si spondeat Titi-

um quinque aureos daturum. Quod si effecturum se ut Titius daret, spoponderit, obligatur." Lib. 3, 20, § 3. He then promises not for another but for himself, and as persons are not presumed to trifle in business transactions with nugatory promises, a person will easily be presumed to mean by such a promise, that he will be surety for the one whose act is promised, when the circumstances are such as to favor the presumption or not to bring it into doubt. Poth. Obl. No. 56. In stating the general principle, that one can stipulate or promise but for himself, I have borrowed the language of the Roman law, because it is put there into a neat and succinct formula. But the general rule is as true in our law as in that of Rome, for it is founded in the nature of things. There are exceptions in both, but they do not reach the present case. It was, doubtless, competent for the libellant to engage in the event that the voyage should not be ended when his son attained his majority, and to bind himself as a surety for him, that he should continue in the vessel and faithfully do duty until the final termination of the voyage, and to make himself responsible for any forfeiture his son might incur, and it is only by such an engagement that he could be affected by acts of his son after his parental authority ceased. The owners might have stipulated for such a promise, and it would have been binding on the promisor. But the circumstances must be peculiar to authorize the presumption of such an engagement without direct evidence, and surely it will not be presumed against probability. Are the circumstances of this kind can fairly and reasonably be inferred? I think not. To authorize such a presumption, we must suppose that the parties, at the time of the contract, contemplated the contingency that the voyage might not be completed until after the son had passed his minority. But more than four years of his minority yet remained, and it is agreed that the ordinary length of whaling voyages in 1846 was three years, and that they never exceeded four. The supposition is, therefore, not only without probability but against it, and there is no direct evidence tending to show that the possibility that the voyage might outlast the boy's minority occurred to the minds of either party. The case then stands on the naked facts and the law applicable to them. My opinion is, that the obligations of the shipping contract made by the father terminated, by the understanding of the parties, as they certainly did in law, when the son attained his majority; and that the rights acquired by the father, during his minority, cannot be affected by any act of the son after the parental authority terminated, and he became sui juris.

Decree for libellant.

[NOTE. Respondent appealed to the circuit court, where the decree herein was affirmed. Case No. 2,951.]